UNITED STATES DISTRICT COURT, DISTRICT OF MINNESOTA

| | |
|---|---|
| Chicago Title Insurance Company, individually and as subrogee of AmTrust Bank, Wells Fargo Bank, N.A., Bank of America, N.A. and Minnesota Lending Company; | Court File No. _____ |
| Plaintiff, | |
| vs. | |
| Sportsmens Contracting, Inc.; Lincoln Homes, Inc.; Pentagon Real Estate Group, Inc.; Premier Real Estate Services, LLC; Cushman Realty, Inc.; Trend Title, LLC; Trend Title, LLC; Thinh Tran a/k/a Tim Tran; Vince Long Nguyen; Truang Quang Tran a/k/a Trung Calvin Tran; Katie Thi Tran; Lua Nguyen; Vera Solodovnikova; Lien Phuong Thi Tran, | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendants. | |

As and for its complaint, Plaintiff Chicago Title Insurance Company ("CTIC") states and alleges as follows:

### PARTIES

1.  Plaintiff CTIC is a Nebraska corporation.

2.  Defendant Sportsmens Contracting, Inc. is a Minnesota Corporation with a registered address of 1321 Andover Blvd. NE, Ham Lake, MN 55304.

3.  Defendant Lincoln Homes, Inc. is a Minnesota Corporation with a registered address of 13748 Nevada Circle, Savage, MN 55378.

4.  Defendant Pentagon Real Estate Group, Inc. is a Minnesota Corporation with a registered business address of 15190 Bluebird Street NW, #108, Andover, MN 55304.

5.     Defendant Premier Real Estate Services, LLC is a Minnesota Limited Liability Company with a registered address of 550 25th Ave. N, St. Cloud, MN 56303.

6.     Defendant Cushman Realty, Inc. is a Minnesota Corporation with a registered business address of 6545 Flying Cloud Drive, Eden Prairie, MN, 55344.

7.     Defendant Wells Title, LLC is a Minnesota Limited Liability Company with a registered business address of 380 Jackson Street #418, St. Paul, MN 55101.

8.     Defendant Trend Title, LLC is a Minnesota Limited Liability Company with a registered business address of 7241 Ohms Lane #200, Edina, MN 55439.

9.     Defendant Thinh Tran, also known as Tim Tran ("Tim Tran") is an individual with a last known address of 13748 Nevada Circle, Savage, MN 55378.

10.     Defendant Vince Long Nguyen ("Vince Nguyen") is an individual with a last known address of 3805 S. Pillsbury Avenue, Minneapolis, MN 55409-1222.

11.     Defendant Truang Quang Tran also known as Trung Calvin Tran ("Trung Calvin Tran") is an individual with a last known address of 11835 NE Davenport St. Minneapolis, MN 55449-4763.

12.     Defendant Katie Thi Tran ("Katie Tran") is an individual with a last known address of 203 Kissimmee Drive, Arlington TX, 76002.

13.     Defendant Lua Nguyen is an individual with a last known address of 149-119th Avenue Northwest, Coon Rapids, MN 55448.

14.     Defendant Vera Solodovnikova ("Solodovnikova") is an individual with a last known address of 7536 Arbor Lane, Savage, MN 55378-4700.

15.     Defendant Lien Phuong Thi Tran ("Lien Tran") is an individual with a last known address of 912 East 4th Street, Apartment A, Duluth, MN 55805-2150.

## JURISDICTION AND VENUE

16.     This is a civil action for fraud, civil conspiracy, negligence and civil violations of

the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968 and

unjust enrichment. These claims arise out of a "straw buyer" mortgage fraud scheme organized

and perpetrated by the Defendants to fraudulently induce mortgage lenders to fund mortgage

loans and CTIC to issue title insurance policies to which the "straw buyers" were otherwise not

entitled. Each of the individual Defendants has been associated in various capacities with one or

more of the business entity defendants, which were, upon information and belief, used as

instrumentalities for the furtherance of the fraudulent scheme.

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 18

U.S.C. § 1964, because this actions arises under RICO. This Court also has subject matter

jurisdiction pursuant to 28 U.S.C. §§ 1332. This Court also has jurisdiction over the remaining

claims and parties based upon 28 U.S.C. § 1367(a), and the doctrines of supplemental and

pendent jurisdiction.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to this claim occurred in the District of

Minnesota. Venue is also proper in this district pursuant to 18 U.S.C. § 1965(a) because, upon

information and belief, virtually all of the Defendants reside in this judicial district.

## INTRODUCTION

19.     CTIC is a title insurance underwriter and a successor by merger to Ticor Title

Insurance Company ("Ticor"). During the 2007 calendar year, CTIC was victimized through a

mortgage fraud scheme perpetrated by the Defendants. As a result of Defendants' fraudulent

scheme, various mortgage lenders were fraudulently induced into extending mortgage loan

financing, and CTIC was fraudulently induced into underwriting loan policies of title insurance to insure the fraudulently-procured mortgages.

20.    Generally, Defendants' mortgage fraud scheme involved the fraudulent procurement of mortgage loans and title insurance policies through the use of false statements, omissions and certifications in the mortgage loan application process.

21.    Once the mortgage loans were approved and the loan proceeds were authorized for distribution, Defendants misappropriated loan proceeds directly and indirectly to scheme participants and their related business entities through a series of fraudulent statements and omissions at closing including sham invoices, falsified agreements and fraudulent certifications on HUD-1 forms and related closing documents.

22.    The direct result of the misappropriation of loan proceeds to the scheme participants resulted in certain subcontractors not being paid for work related to building new homes on the subject properties.    The non-payment directly resulted in the recordation of mechanic's liens against the subject properties, which threatened the first priority position of the subject mortgages.

23.    Subcontractor 84 Lumber, Inc. ("84 Lumber") who was not paid for $451,940.15 worth of materials furnished toward the construction of new homes on the subject properties, initiated two separate actions in the State of Minnesota to foreclose its mechanic's liens. Those actions were captioned as *84 Lumber Company, Limited Partnership v. Sportsmens Contracting, Inc., et al,* Anoka County Court File No. 02-CV-08-7322 and *84 Lumber Company, Limited Partnership v. Sportsmens Contracting, Inc., et al.,* Anoka County Court File No. 02-CV-08-7195. (collectively the "State Actions").

24.    As a direct and proximate result of the mortgage fraud scheme, CTIC was thrust

4

into litigation with 84 Lumber in the State Actions to defend priority of the insured mortgages pursuant to its indemnification obligations under the title insurance policies.

25.     CTIC incurred substantial damages in defending and settling the mechanic's lien claims and preserving priority of the mortgages in the State Actions, including amounts paid to settle the mechanic's lien claims, costs, expenses, and attorneys' fees. As a result of incurring these substantial costs, CTIC obtained a right of subrogation to the claims of the mortgage lenders, and asserts the present claims both as subrogee of the mortgage lenders as well as in its individual capacity.

## GENERAL FACTUAL BACKGROUND

26.     Defendants' mortgage fraud scheme involved purchases of new homes situated upon seven separate parcels of real property in Anoka County, Minnesota, described as follows (collectively "the Seven Parcels"):

- 15934 Quince Street, Andover, Minnesota, legally described as Parcel 15, Block 1, Constance Corners ("Parcel 1");

- 15963 Quince Street, Andover, Minnesota, legally described as Parcel 16, Block 2, Constance Corners ("Parcel 2");

- 2970-128th Lane, Blaine, Minnesota, legally described as Parcel 14, Block 2, Harpers Street Woods ("Parcel 3");

- 3001-128th Lane, Blaine, Minnesota, legally described as Parcel 11, Block 1, Harpers Street Woods ("Parcel 4");

- 3036-128th Lane, Blaine, Minnesota, legally described as Parcel 5, Block 3, Harpers Street Woods ("Parcel 5");

- 2914-128th Lane, Blaine, Minnesota, legally described as Parcel 21, Block 2, Harpers Street Woods ("Parcel 6"); and

- 2944-128th Lane, Blaine, Minnesota, legally described as Parcel 17, Block 2, Harpers Street Woods ("Parcel 7").

27.     On information and belief, Defendants Trung Calvin Tran, Vince Nguyen, Tim

Tran and a combination of other Defendants conspired with Sportsmens Contracting, Inc. ("Sportsmens"), the general contractor responsible for building new homes on each of the Seven Parcels as well as the owner/seller of the Seven parcels, to conduct a mortgage fraud scheme utilizing straw buyers to obtain and misappropriate mortgage loan proceeds to the scheme participants.

28.     On information and belief, a combination of the Defendants, including but not limited to Trung Calvin Tran, Vince Nguyen, Tim Tran and Sportsmens initiated the mortgage fraud scheme by soliciting and securing straw buyers for each of the Seven Parcels sometime in early 2007.

29.     On information and belief, Trung Calvin Tran, Vince Nguyen, Tim Tran and a combination of other Defendants offered financial incentives to four straw buyers including Katie Tran, Lua Nguyen, Vera Solodovnikova and Lien Tran (collectively, the "Straw Buyers"), in exchange for the use of their identities and credit histories to obtain mortgage loan financing.

30.     On information and belief, the Straw Buyers agreed to allow their names and credit to be used on the mortgage loan applications in exchange for compensation. The Straw Buyers agreed to be purchasers of the Seven Parcels in name only, and at no time possessed an intention to make the new homes a primary residence or to repay the mortgage loans secured for the purchase.

31.     Defendant Katie Tran agreed to be a straw buyer for new homes on Parcels 1 and 7. On her loan application for Parcel 1, Katie Tran swore that the new home on that Parcel would be used as her primary residence.  On a second loan application seeking mortgage loan financing from a different lender for Parcel 7, Katie Tran swore that the new home on that Parcel would be used as her primary residence.  Katie Tran deliberately concealed the existence of the

transaction on Parcel 1 from her lender on Parcel 7, and deliberately concealed the existence of the transaction on Parcel 7 from her lender on Parcel 1. Katie Tran closed on both transactions within only three days of one another. Defendant Trend Title was the closing agent on both transactions, yet failed to report any concern or irregularity to the Mortgage Lenders.

32.     Defendant Vera Solodovnikova agreed to be a straw buyer for new homes on Parcels 3 and 6. On her loan application for Parcel 3, Vera Solodovnikova swore that the new home on that Parcel would be used as her primary residence. On a second loan application seeking mortgage loan financing from a different lender for Parcel 6, Katie Tran swore that the new home on that Parcel would be used as her primary residence. Vera Solodovnikova deliberately concealed the existence of the transaction on Parcel 3 from her lender on Parcel 6, and deliberately concealed the existence of the transaction on Parcel 6 from her lender on Parcel 3. Vera Solodovnikova closed on both transactions within only three weeks of one another. Defendant Wells Title was the closing agent for both transactions, yet failed to report any concern or irregularity to the Mortgage Lenders.

33.     Defendant Lien Tran agreed to be a straw buyer for new homes on Parcels 4 and 5. On his loan application for Parcel 4, Lien Tran swore that the new home on that Parcel would be used as his primary residence. On a second loan application seeking mortgage loan financing from a different lender for Parcel 5, Lien Tran swore that the new home on that Parcel would be used as his primary residence. Lien Tran deliberately concealed the existence of the transaction on Parcel 4 from his lender on Parcel 5, and deliberately concealed the existence of the transaction on Parcel 5 from his lender on Parcel 4. Lien Tran closed on both transactions within only four days of one another.

34.     Defendant Tim Tran initially executed a purchase agreement, made an earnest

money deposit and applied for a mortgage loan on Parcel 2.  However, Tim Tran was later substituted as the straw buyer of Parcel 2 by Defendant Lua Nguyen.  Lua Nguyen swore on her loan application that the new home on Parcel 2 would be used as her primary residence.  Tim Tran's business, Lincoln Homes, later took $206,600 out of various closings despite there being no evidence that either he or his business made any contribution toward the subject transactions whatsoever.

35.     On information and belief, each of the Straw Buyers had pre-existing familial, personal and/or business relationships with a combination of other scheme participants including Trung Calvin Tran, Tim Tran and Vince Nguyen that were never disclosed to the mortgage lenders or CTIC.

**A. Fraudulent Loan Applications**

36.     In order to secure mortgage financing and fund the purchase of new homes on each of the Seven Parcels, the Straw Buyer Defendants completed loan applications wherein they disclosed their financial information including income, assets and liabilities to the Mortgage Lenders.

37.     By design, and as part and parcel of the mortgage fraud scheme, the Straw Buyer Defendants' deliberately falsified their loan applications with misrepresented material financial information. Specifically, misrepresentations in the Straw Buyers' loan applications included, but were not limited to: (1) inflated asset values and cash assets; (2) employment and income information; (3) a verification that each of the properties would serve as the straw buyer's "primary residence"; and in some cases (4) fraudulently representing the straw buyer's history of home ownership.

38.     Upon information and belief, the Straw Buyer Defendants were aware that

8

information listed in the loan applications was false and intentionally included the false information for the purposes of meeting the Mortgage Lenders' underwriting standards and obtaining approval for mortgage loan financing to which they were otherwise not entitled. On information and belief, the Straw Buyers were instructed to falsify, or were assisted in falsifying, their mortgage applications from a combination of other Defendants in this action.

39.     The loan applications were completed on the Uniform Residential Loan Application form issued by the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac). These application forms included a certification providing that the information included was true and correct and that any intentional or negligent misrepresentation may subject the Borrower to civil and criminal penalties and liability to the lenders for money damages. Each of the Straw Buyer Defendants knowingly and intentionally misrepresented and falsely certified that the information included on the loan application form was true and correct when it in fact was not.

40.     Lien Tran and Vera Solodovnikova, on separate applications involving separate lenders, requested on their loan applications that all statements and correspondence relating to repayment of the mortgage loans be forwarded to a P.O. Box originated by Defendant Trung Calvin Tran. On information and belief, the Straw Buyer Defendants were instructed to use this P.O. Box by Trung Calvin Tran and a combination of other Defendants as a part of and in furtherance of the mortgage fraud scheme.

41.     Based on the false and misleading financial and other information stated in the mortgage loan applications of the Straw Buyer Defendants, various lenders, including AmTrust Bank, Wells Fargo Bank, Bank of America, and Minnesota Lending Company (collectively the "Mortgage Lenders") were fraudulently induced into approving the Straw Buyer Defendants'

loan applications and extending purchase money mortgage loans to the Straw Buyer Defendants for Parcels 1 – 7.

42.     CTIC, as successor by merger to Ticor Title Insurance, was fraudulently induced by the Defendants' fraudulent loan applications and closing documents to issue loan policies of title insurance insuring priority position of the mortgages on each of the Seven Parcels and promising to indemnify the Mortgage Lenders in the event of a covered loss of priority.

**B.  Fraudulent Closing Documents and Misallocation of Loan Proceeds**

43.     Wells Title, LLC ("Wells Title") and Trend Title, LLC ("Trend Title") (collectively the "Title Agents") were hired to handle six of the seven closings.  Wells Title, a company owned by Defendant Vince Nguyen, handled the closing on Parcels 3, 4 and 6.  Trend Title handled the closing of Parcels 1, 2 and 7.  Guarantee Title, a separate entity not a party in this action, handled the closing of Parcel 5.  Each of the above-referenced closings took place in late-November or early-December of 2007.

44.     Sportsmens, along with the Title Agents and Straw Buyer Defendants, executed a series of documents at the seven closings, including mortgages, notes, HUD-1 settlement statements, seller's affidavits, related conveyancing documents and other necessary forms.

45.     By their signatures, the Straw Buyer Defendants and Sportsmens certified that the HUD-1's represented true and accurate statements of all receipts and disbursements made on their accounts in the transaction.  At the time they made their HUD-1 certifications, they knew the certifications were false and that the HUD-1 contained material misrepresentations and omissions.

46.     On information and belief, the HUD-1 forms were falsified to misrepresent sham transactions as legitimate business transactions relating to the Seven Parcels.  Defendants made

material misrepresentations and omissions to create the appearance that business entities owned, operated by, or affiliated with the Defendant scheme participants had provided services and were owed money out of the various closings when they in fact were not, or that those entities were owed amounts that exceeded a reasonable fair market value for services actually rendered.

47.     On information and belief, Defendants including Lincoln Homes, Inc. ("Lincoln Homes") Pentagon Real Estate Group, Inc. ("Pentagon"), Premier Real Estate Services, Inc. ("Premier") and Cushman Realty, Inc. ("Cushman") submitted sham invoices and/or agreements for services in order to obtain unwarranted and illegal payments out of the various closings and illegally misappropriate mortgage loan proceeds to the scheme participants, despite having no intention to perform any services with respect to the Seven Parcels.

48.     Lincoln Homes received $206,600 out of various closings for alleged management and supervision services despite having furnished no contribution whatsoever to the subject transactions.

49.     Pentagon, who is owned at least in part by one of the same owners and principals of Sportsmens, received multiple payments out of various closings for alleged real estate broker services despite having furnished little or no services on the subject transactions.

50.     Multiple other business entities owned or affiliated with at least one of Sportsmens owners and principals, including Sportsmens, Excel Drywall and Flooring by Design also received multiple payouts out of closings on the Seven Parcels.  To the extent these entities actually furnished goods and services on the subject transactions, the value and extent of such services were deliberately misrepresented in order to secure artificially inflated payouts out of closings.

51.     Cushman received $58,000 out of the closing on Parcel 1 for allegedly "assisting

the parties with closing" despite having furnished little or no services related to the subject transaction.

52.     Premier received multiple payments out of various closings for alleged real estate agent-related services despite having furnished little or no services on the subject transactions.

53.     On information and belief, loan proceeds were paid to these various entities as compensation for their involvement in facilitating and perpetrating the mortgage fraud scheme. Various payments to scheme participants were either not disclosed in the closing documents or were deliberately mischaracterized as legitimate transactions in the closing documents to fraudulently induce successful closing of the mortgage loans and allow for payouts to scheme participants who were not legally entitled thereto.

54.     To the extent services were provided by the above-identified Defendant entities, the value and scope of such services were deliberately misrepresented by the scheme participants to secure inflated payouts out of closings in amounts that vastly exceeded the fair market value of those services.

55.     Sportsmens, at the direction or with the assistance of a combination of Defendants, executed and submitted a sworn construction statement for each of the closings. As a part of and in furtherance of the mortgage fraud scheme, Sportsmens sworn construction statements deliberately and intentionally omitted certain subcontractors who were owed money for their contributions of labor and/or material, including 84 Lumber.

56.     Sportsmens, at the direction or with the assistance of a combination of Defendants, also executed and submitted a sworn seller's affidavit for each closing.  As a part of and in furtherance of the mortgage fraud scheme, Sportsmens misrepresented that all subcontractors had been paid for their work at the time of each closing, despite Sportsmens and

Defendants' knowledge that various subcontractors remained unpaid at each of the closings, including 84 Lumber.

57.     On information and belief, each of the Defendants knew the sworn construction statements and contractor's affidavits were false and used those documents in furtherance of the mortgage fraud scheme to ensure the mortgage loan proceeds could be misappropriated to scheme participants instead of legitimate subcontractors.

58.     By misappropriating the mortgage loan proceeds to scheme participants through the various business entities identified above, rather than paying loan proceeds to subcontractors to whom those amounts were rightfully owed, the Defendants' scheme resulted in 84 Lumber not being paid for materials it furnished toward the construction of new homes on each of the Seven Parcels.

59.     As a result of non-payment, 84 Lumber recorded mechanic's liens against Parcels 1 – 7 in the original principal amount of $451,940.15 and commenced the two State Actions to foreclose the mechanic's liens and recover not only the principal amount of the liens but also interest and attorneys' fees as allowed by statute.  The mechanic's lien claims and State Actions jeopardized the senior priority of the Mortgage Lenders' security interests, triggering CTIC's duty to defend and indemnify the Mortgage Lenders in the State Actions.

60.     CTIC, as successor by merger to Ticor, incurred substantial expenses in defending against and ultimately settling the mechanic's lien claims in the two State Actions, including attorneys' fees, costs, disbursements and settlement payouts to 84 Lumber.  As a result of incurring such expenses, and pursuant to the terms of the loan policies of title insurance providing for a right of subrogation to the claims of the Mortgage Lenders, CTIC is the proper party in interest to recoup those damages in the present action.

## ALLEGATIONS PARTICULAR TO EACH TRANSACTION

### A. Parcel 1 – 15934 Quince Street, Andover, Minnesota

61.     Defendant Katie Tran completed and submitted a mortgage loan application to lender AmTrust Bank in 2007. On information and belief, Katie Tran made material misrepresentations of fact on her loan application, specifically relating to her: (1) assets; (2) income; (3) her intention to use the newly constructed home on Parcel 1 as a primary residence; and (4) her history of home ownership prior to submitting the loan application.

62.     Based on the fraudulent loan application of Katie Tran, lender AmTrust Bank approved mortgage loan financing for the acquisition of Parcel 1, and obtained a purchase money mortgage executed by Katie Tran in favor of MERS (as nominee of AmTrust) dated December 3, 2007 and recorded on April 3, 2008 in the Office of the Anoka County Recorded as Doc. No. 1999791.020.

63.     Closing on the purchase of Parcel 1 took place on or about December 3, 2007. Defendant Trend Title handled the closing as title agent.

64.     AmTrust submitted Master Closing Instructions to Trend Title imparting specific duties and responsibilities with respect to Fraud Prevention. Among others, the Master Closing Instructions created a duty on the part of Trend Title to: (1) disclose any pre-existing relationships between the title agent and any of the parties to the transaction to the mortgage lender and obtain the lender's consent to proceed; (2) to suspend the closing and immediately notify the lender if the title agent has any reason to believe there was a fraud or scheme related to the transaction; (3) to immediately disclose to the lender the title agent's knowledge of any misstatement made in the application or closing documentation; (4) obtain the borrower's acknowledgement that no third party is paying the borrower to lend credit or identity to the

transaction; (5) to disclose to the mortgage lender if the real estate commission appears excessive for the market area; and (6) to immediately stop the closing and notify the lender of any request for unusual payments to be disbursed from the proceeds of the loan, whether listed on the HUD-1 Settlement Statement or not.

65.     Trend Title negligently failed to satisfy each of the above-identified Master Closing Instructions with respect to fraud prevention on the closing on Parcel 1.

66.     A series of documents were executed at closing, including a Mortgage, Note, HUD-1 Settlement Statement, affidavits and related conveyancing documents.

67.     Sportsmens and Katie Tran, at the direction or with the assistance of a combination of other Defendants, signed a HUD-1 statement in support of the closing on Parcel 1. By their signatures, they certified that the HUD-1 represented a true and accurate statement of all receipts and disbursements made on their account in the transaction.

68.     At the time Sportsmens and Katie Tran made their HUD-1 certifications, they knew the certifications were false in several key respects, including: (1) the HUD-1 intentionally omitted listing certain payments made to scheme participants either directly and/or indirectly out of the mortgage loan proceeds; and (2) the HUD-1 and related documentation falsely certified that certain defendant business entities had provided and were owed money for services they did not in fact provide.

69.     In order to direct loan proceeds to the scheme participants, Sportsmens and Katie Tran falsely represented and certified on the HUD-1 and other closing documents that certain business entities related to the scheme participants had provided specified goods and/or services on the transactions with full knowledge that the goods or services specified had not in fact been provided and that certain payouts identified in the HUD-1 were "sham transactions" deliberately

mischaracterized as legitimate transactions to misallocate loan proceeds to scheme participants.

70.     Sportsmens and Katie Tran also misrepresented in the closing documents that Sportsmens, as well as multiple other entities owned by or affiliated with Sportsmens owners and principals, were entitled to payouts that grossly exceeded the fair market value of goods or services actually furnished.

71.     Defendants Tim Tran and his business, Lincoln Homes submitted a fraudulent invoice claiming to be owed over $54,800 for services on Parcel 1 that it never provided. Katie Tran and Sportsmens falsely certified on the HUD-1 that Lincoln Homes had in fact provided $54,800 worth of services on Parcel 1. Pursuant to the fraudulent invoice and HUD-1, Lincoln Homes was paid over $54,800 out of the closing of Parcel 1 despite having furnished no services or materials on the transaction. The payment to Lincoln Homes was an illegitimate and fraudulent transaction used solely to misappropriate loan proceeds to the scheme participants.

72.     Defendant Cushman executed a fraudulent agreement for services claiming that it would provide unspecified closing services in exchange for a $58,000 payment out of the closing on Parcel 1. Katie Tran and Sportsmens falsely certified on the HUD-1 that Cushman had in fact provided services related to the closing and was owed $58,000 for those services. Pursuant to the fraudulent agreement for services and the fraudulent certification on the HUD-1, Cushman received a $58,000 payment out of the closing on Parcel 1. On information and belief, the payment to Cushman Realty was a sham transaction used solely to misdirect loan proceeds to the scheme participants.

73.     Defendant Pentagon executed a fraudulent agreement for services claiming it would provide real estate agent-related services in exchange for a $19,667 payment out of the closing on Parcel 1. Katie Tran, Trend Title and Sportsmens falsely certified on the HUD-1 that

Pentagon had in fact provided real estate agent-related services and was owed $19,667 for those services. Pursuant to the fraudulent agreement for services and the fraudulent certification on the HUD-1, Pentagon received a $19,667 payment out of the closing on Parcel 1. On information and belief, the payment to Pentagon was a sham transaction used solely to misdirect loan proceeds to the scheme participants.

74.    Defendant Katie Tran had pre-existing familial, personal and/or business relationships with Tim Tran and Lincoln Homes. On information and belief, these pre-existing relationships were deliberately concealed or were otherwise not disclosed to the Mortgage Lenders or CTIC by the Defendants.

75.    Sportsmens, at the direction of a combination of the Defendants, executed and submitted a sworn construction statement and a seller's affidavit in support of closing on Parcel 1. The sworn construction statement intentionally omitted subcontractors that were owed money for their services on the construction of a new home on Parcel 1, including 84 Lumber. Sportsmens knowingly and intentionally misrepresented in the seller's affidavit that all subcontractors had been paid in full when they in fact had not. On information and belief, Sportsmens made these misrepresentations with the assistance, or at the direction of, the other scheme participants as a part and in furtherance of the mortgage fraud scheme.

76.    Sportsmens, Katie Tran and a combination of other Defendants knew that the sworn construction statement and seller's affidavit contained material misrepresentations and omissions and intended that those documents be relied upon by the Mortgage Lenders and CTIC in order to obtain mortgage loans and title insurance policies to which they were otherwise not entitled.

**B. Parcel 2 – 15963 Quince Street, Andover, Minnesota**

77.     Defendant Tim Tran initially entered into an agreement to purchase Parcel 2 and submitted a loan application to AmTrust Bank to obtain a purchase money mortgage loan for the acquisition of Parcel 2.   Lua Nguyen was substituted as a straw buyer of Parcel 2 by a combination of the Defendant scheme participants sometime on or around August of 2007.

78.     Defendant Lua Nguyen completed and submitted a mortgage loan application to lender AmTrust Bank in the Fall of 2007.   On information and belief, Lua Nguyen made material misrepresentations of fact on her loan application, specifically relating to her: (1) assets; (2) income; (3) intention to use the home as a primary residence; and (4) history of home ownership prior to submitting the loan application.

79.     Based on the fraudulent loan application of Lua Nguyen, lender AmTrust Bank approved mortgage loan financing for the acquisition of Parcel 2, and obtained a purchase money mortgage on Parcel 2 executed by Lua Nguyen in favor of MERS (as nominee of AmTrust) dated November 19, 2007 and recorded on April 17, 2008 by the Anoka County Recorder as Doc. No. 2000097.012.

80.     Closing on the purchase of Parcel 2 took place on or about November 19, 2007. Defendants Trend Title handled the closing as title agent.

81.     AmTrust submitted Master Closing Instructions to Trend Title imparting specific duties and responsibilities with respect to Fraud Prevention.   Among others, the Master Closing Instructions created a duty on the part of Trend Title  to: (1) to suspend the closing and immediately notify the lender if the title agent has any reason to believe there was a fraud or scheme related to the transaction; (2) to immediately disclose to the lender the title agent's knowledge of any misstatement made in the application or closing documentation; (3) obtain the

borrower's acknowledgement that no third party is paying the borrower to lend credit or identity to the transaction; (4) to disclose to the mortgage lender if the real estate commission appears excessive for the market area; and (5) to immediately stop the closing and notify the lender for any request for unusual payments to be disbursed from the proceeds of the loan, whether listed on the HUD-1 Settlement Statement or not.

82.     On information and belief, Trend Title negligently failed to satisfy each of the above-identified Master Closing Instructions with respect to fraud prevention on the closing on Parcel 2.

83.     A series of documents were executed at closing, including a Mortgage, Note, HUD-1 Settlement Statement, affidavits and related conveyancing documents.

84.     On information and belief, Sportsmens and Lua Nguyen, at the direction or with the assistance of a combination of other Defendants, signed a HUD-1 statement in support of the closing on Parcel 2. By their signatures, they certified that the HUD-1 represented a true and accurate statement of all receipts and disbursements made on their account in the transaction. At the time they made their HUD-1 certifications, they knew the certifications were false in several key respects, including: (1) the HUD-1 intentionally omitted listing certain payments made to scheme participants either directly and/or indirectly out of the mortgage loan proceeds; and (2) the HUD-1 and related documentation falsely certified that certain defendant business entities had provided and were owed money for services they did not in fact provide.

85.     On information and belief, multiple payments set forth in the HUD-1 were to business entities owned by or related to the scheme participants and were made for the sole purpose of compensating the scheme participants and perpetuating the mortgage fraud scheme.

86.     In order to misappropriate loan proceeds to the participants' business entities,

Sportsmens and Lua Nguyen falsely represented and certified on the HUD-1 and other closing documents that certain business entities related to the scheme participants had provided services on the transaction with full knowledge that those services had not in fact been provided or that the fees paid for those services were inflated as a cover to misdirect loan proceeds to scheme participants.

87.     Sportsmens and Lua Nguyen also misrepresented in the closing documents that Sportsmens, as well as multiple other entities owned by or affiliated with Sportsmens owners and principals, were entitled to payouts that grossly exceeded the fair market value of goods or services actually furnished.

88.     On information and belief, Defendant Premier executed a fraudulent agreement for services claiming it would provide certain real estate agent-related services in exchange for an $8,800 payment out of the closing on Parcel 2.  Lua Nguyen, Trend Title and Sportsmens falsely certified on the HUD-1 that Premier had in fact provided services related to the closing and was owed $8,800 for those services.  Pursuant to the fraudulent agreement for services and the fraudulent certification on the HUD-1, Premier received an $8,800 payment out of the closing on Parcel 2.  On information and belief, the payment to Premier was an illegitimate transaction used solely to misdirect loan proceeds to the scheme participants.

89.     Sportsmens, at the direction of a combination of Defendants, executed and submitted a sworn construction statement and seller's affidavit in support of closing on Parcel 2. The sworn construction statement intentionally omitted subcontractors that were owed money for their services on the construction of a new home on Parcel 2.  Sportsmens knowingly and intentionally misrepresented in the seller's affidavit that all subcontractors had been paid for their work when they in fact had not. On information and belief, Sportsmens made these

misrepresentations with the assistance of, or at the direction of, a combination of the other scheme participants in furtherance of the mortgage fraud scheme.

90.     Sportsmens, Lua Nguyen and a combination of the other Defendants knew that the sworn construction statement and seller's affidavit contained material misrepresentations and omissions and intended that those documents be relied upon by the Mortgage Lenders and CTIC in order to close on the acquisition of Parcel 2.

### C. Parcel 3 -- 2970 128th Lane, Blaine, Minnesota

91.     Defendant Solodovnikova completed and submitted a mortgage loan application to lender Wells Fargo Bank in 2007.  Solodovnikova made material misrepresentations of fact on her loan application, specifically relating to her: (1) assets; (2) income; (3) intention to use the home as a primary residence; and (4) history of home ownership prior to submitting the loan application.

92.     Defendant Solodovnikova directed on her loan application documents that all correspondence relating to the payment of the mortgage be directed to a P.O. Box belonging to and originated by Defendant Trung Calvin Tran.

93.     Based on the fraudulent loan application of Solodovnikova, lender Wells Fargo approved mortgage loan financing for the acquisition of Parcel 3, and took a purchase money first mortgage on Parcel 3 executed by Vera Solodovnikova in favor of Wells Fargo Bank, N.A. dated December 21, 2007 and recorded on April 25, 2008 in the Office of the Anoka County Recorder as Doc. No. 2000255.002.

94.     Vera Solodovnikova also executed a home equity line of credit mortgage on Parcel 3 in favor of Wells Fargo dated December 21, 2007 and recorded on April 17, 2008 in the Office of the Anoka County Recorder as Doc. No. 2000255.003.

95.    Closing on Parcel 3 took place on or about December 21, 2007. Defendants Wells Title and its owner, Vince Nguyen, handled the closing as the title agent.

96.    Sportsmens, Wells Title and Solodovnikova executed a series of documents at closing, including a Mortgage, Note, HUD-1 Settlement Statement, and related conveyancing documents.

97.    Sportsmens, Wells Title and Solodovnikova, at the direction or with the assistance of a combination of other Defendants, signed a HUD-1 statement in support of the closing on Parcel 3.  By their signatures, they certified that the HUD-1 represented a true and accurate statement of all receipts and disbursements made on the account in the transaction.  At the time they made their HUD-1 certifications, they knew the certifications were false in several key respects, including: (1) the HUD-1 intentionally omitted listing certain payments made to scheme participants either directly and/or indirectly out of the mortgage loan proceeds; and (2) the HUD-1 and related documentation falsely certified that certain defendant business entities had provided and were owed money for services they did not in fact provide.

98.    Multiple payments set forth in the HUD-1 were to business entities owned by or related to the scheme participants and were made for the sole purpose of compensating the scheme participants and perpetuating the mortgage fraud scheme.

99.    Sportsmens and Vera Solodovnikova also misrepresented in the closing documents that Sportsmens, as well as multiple other entities owned by or affiliated with Sportsmens owners and principals, were entitled to payouts that grossly exceeded the fair market value of goods or services actually furnished.

100.    Pentagon Real Estate Group, at the direction of a combination of Defendants, executed a fraudulent Seller Facilitator Services Agreement claiming an agreement to provide

services it in fact had no intention of providing.  Pursuant to the fraudulent Seller Facilitator Services Agreement and fraudulent HUD-1 certifying that Pentagon had provided services it did not in fact provide, Pentagon Real Estate Group received $28,367.00 out of the closing on Parcel 3.  On information and belief, the payment to Pentagon Real Estate Group was a misrepresented as a legitimate business transaction as part of the scheme to misappropriate loan proceeds to scheme participants.

101.    Sportsmens, at the direction of a combination of Defendants, executed and submitted a sworn construction statement and a seller's affidavit in support of the closing on Parcel 3.  The sworn construction statement intentionally omitted subcontractors that were owed money for their services on the construction of a new home on Parcel 3. The seller's affidavit further misrepresented that all subcontractors had been paid prior to closing when they in fact had not. Sportsmens made these misrepresentations with the assistance of, or at the direction of, a combination of the other scheme participants in furtherance of the mortgage fraud scheme.

102.    Sportsmens, Solodovnikova, Wells Title, Vince Nguyen and a combination of the other Defendants knew that the sworn construction statement and seller's affidavit contained material misrepresentations and omissions and intended that those documents be relied upon by the Mortgage Lenders and CTIC in order to close on the acquisition of Parcel 3.

### D. Parcel 4 -- 3001-128th Lane, Blaine, Minnesota

103.    Defendant Lien Tran completed and submitted a mortgage loan application to lender Wells Fargo Bank in 2007.  On information and belief, Lien Tran made material misrepresentations of fact on his loan application, specifically relating to his: (1) assets; (2) income; (3) intention to use the home as a primary residence; and (4) history of home ownership prior to submitting the loan application.

104.    Defendant Lien Tran directed on his loan application documents that all correspondence relating to the payment of the mortgage be directed to a P.O. Box belonging to and originated by Defendant Trung Calvin Tran.

105.    Based on the fraudulent loan application of Lien Tran, lender Pinnacle Mortgage of Nevada, LLC approved mortgage loan financing for the acquisition of Parcel 4, and took a mortgage on Parcel D executed by Lien Tran in favor of Pinnacle Mortgage of Nevada, LLC dated December 17, 2007 and recorded on March 4, 2008 in the Office of the Anoka County Recorder as Doc. No. 1999158.008 (the "Pinnacle Mortgage").

106.    On December 14, 2007, the Pinnacle Mortgage was assigned to Wells Fargo Bank, N.A. by an assignment dated the same day and recorded on March 4, 2008 in the Office of the Anoka County Recorder as Doc. No. 1999158.009.

107.    On December 21, 2007, Wells Fargo took a home equity line of credit mortgage on Parcel 4 executed by Lien Tran in favor of Wells Fargo bearing the same date and recorded March 4, 2008 in the Office of the Anoka County Recorder as Doc. No. 1999158.010.

108.    Closing of the purchase of Parcel 4 took place on or about December 17, 2007. Defendants Wells Title and its owner, Vince Nguyen, handled the closing as the title agent.

109.    Sportsmens, Wells Title and Lien Tran executed a series of documents at closing, including a Mortgage, Note, HUD-1 Settlement Statement, affidavits, related conveyancing documents, as well as sworn construction statements and contractor's affidavits.

110.    Sportsmens, Wells Title and Lien Tran at the direction or with the assistance of a combination of other Defendants, prepared a HUD-1 statement in support of the closing on Parcel 4.  By their signatures, they certified that the HUD-1 represented a true and accurate statement of all receipts and disbursements made on the account in the transaction.  At the time

they made their HUD-1 certifications, they knew the certifications were false in several key respects, including: (1) the HUD-1 intentionally omitted listing certain payments made to scheme participants either directly and/or indirectly out of the mortgage loan proceeds; and (2) the HUD-1 and related documentation falsely certified that certain defendant business entities had provided and were owed money for services they did not in fact provide.

111.   Multiple payments set forth in the HUD-1 were to business entities owned by or related to the scheme participants and were made for the sole purpose of compensating the scheme participants and perpetuating the mortgage fraud scheme.

112.   Sportsmens and Lien Tran also misrepresented in the closing documents that Sportsmens, as well as multiple other entities owned by or affiliated with Sportsmens owners and principals, were entitled to payouts that grossly exceeded the fair market value of goods or services actually furnished.

113.   Pentagon Real Estate Group, at the direction of a combination of Defendants, executed a fraudulent Seller Facilitator Services Agreement claiming an agreement to provide services it in fact had no intention of providing.  Pursuant to the fraudulent Seller Facilitator Services Agreement and fraudulent HUD-1 certifying that Pentagon had provided services it did not in fact provide, Pentagon Real Estate Group received $28,367.00 out of the closing on Parcel 4. On information and belief, the payment to Pentagon Real Estate Group was misrepresented as a legitimate business transaction as part of the scheme to misappropriate loan proceeds to scheme participants.

114.   Sportsmens, at the direction of a combination of Defendants, executed and submitted a sworn construction statement and a seller's affidavit in support of closing on Parcel 4.   On information and belief, the sworn construction statement intentionally omitted

25

subcontractors that were owed money for their services on the construction of a new home on Parcel 4. The seller's affidavit also contained material misrepresentations in that it falsely certified that all subcontractors had been paid for their work prior to closing when they in fact had not. On information and belief, Sportsmens made these misrepresentations with the assistance of, or at the direction of, a combination of the other scheme participants in furtherance of the mortgage fraud scheme.

115. Sportsmens, Lien Tran, Wells Title, Vince Nguyen and a combination of the other Defendants knew that the sworn construction statement and seller's affidavit contained material misrepresentations and omissions and intended that those documents be relied upon by the Mortgage Lenders and CTIC in order to close on the acquisition of Parcel 4.

### E. Parcel 5 -- 3036-128th Lane, Blaine, Minnesota

116. Defendant Lien Tran completed and submitted a mortgage loan application to lender Bank of America in 2007. On information and belief, Lien Tran made material misrepresentations of fact on his loan application, specifically relating to his: (1) assets; (2) income; (3) intention to use the home as a primary residence; and (4) history of home ownership prior to submitting the loan application.

117. The information included in Defendant Lien Tran's mortgage loan application for Parcel 5 differed substantially from the information in his mortgage loan application for Parcel 4. Notably, Lien Tran's reported annual income on his application for Parcel 5 was more than $24,000 higher than his stated income on his loan application for Parcel 4.

118. Lien Tran knew the loan applications contained material misrepresentations and intended that those misrepresentations be relied upon by the Mortgage Lenders and CTIC to issue the mortgage loans and title insurance policies to which he was otherwise not entitled.

119.     Based on the fraudulent loan application of Lien Tran, lender Bank of America approved mortgage loan financing for the acquisition of Parcel 5, and took a Mortgage on parcel 5 executed by Lien Tran in favor of Bank of America, N.A. dated December 3, 2007 and recorded on January 7, 2008 in the Office of the Anoka County Recorder as Doc. No. 1998066.006.

120.     Bank of America, N.A. also took a second Mortgage on parcel 5 dated December 3, 2007 and recorded on January 7, 2008 in the Office of the Anoka County Recorder as Doc. No. 1998066.007.

121.     Closing of the purchase of Parcel 5 took place on or about December 7, 2007. The title agent on the transaction was Guarantee Trust & Title Corporation, a third-party not party to the present action.

122.     Defendants Sportsmens and Lien Tran executed a series of documents at closing, including a Mortgage, Note, HUD-1 Settlement Statement, affidavits, related conveyancing documents, as well as sworn construction statements and contractor's affidavits.

123.     Sportsmens and Lien Tran at the direction or with the assistance of a combination of other Defendants, signed a HUD-1 statement in support of the closing on Parcel 5.  By their signatures, they certified that the HUD-1 represented a true and accurate statement of all receipts and disbursements made on the account in the transaction.  At the time Sportsmens and Lien Tran made their HUD-1 certifications, they knew the certifications were false in several key respects, including: (1) the HUD-1 intentionally omitted listing certain payments made to scheme participants either directly and/or indirectly out of the mortgage loan proceeds; and (2) the HUD-1 and related documentation falsely certified that certain defendant business entities had provided and were owed money for services they did not in fact provide.

124.    Multiple payments set forth in the HUD-1 were to business entities owned by or related to the scheme participants and were made for the sole purpose of compensating the scheme participants and perpetuating the mortgage fraud scheme.

125.    Sportsmens and Lien Tran also misrepresented in the closing documents that Sportsmens, as well as multiple other entities owned by or affiliated with Sportsmens owners and principals, were entitled to payouts that grossly exceeded the fair market value of goods or services actually furnished.

126.    Pentagon Real Estate Group, at the direction of a combination of Defendants, executed a fraudulent Seller Facilitator Services Agreement claiming an agreement to provide services it in fact had no intention of providing. Pursuant to the fraudulent Seller Facilitator Services Agreement and fraudulent HUD-1 certifying that Pentagon had provided services it did not in fact provide, Pentagon Real Estate Group received $24,767 out of the closing on Parcel 6. On information and belief, the payment to Pentagon Real Estate Group was a misrepresented as a legitimate business transaction as part of the scheme to misappropriate loan proceeds to scheme participants.

127.    Sportsmens, at the direction of a combination of Defendants, executed and submitted a sworn construction statement and a seller's affidavit in support of closing on Parcel 5. The sworn construction statement intentionally omitted subcontractors that were owed money for their services on the construction of a new home on Parcel 5 as a part and in furtherance of the mortgage fraud scheme. Sportsmens knowingly and intentionally misrepresented in the seller's affidavit that all subcontractors had been paid in full when they in fact had not. On information and belief, Sportsmens made these misrepresentations with the assistance of, or at the direction of, a combination of the other scheme participants in furtherance of the mortgage

fraud scheme.

128.    Sportsmens, Lien Tran and a combination of other Defendants knew that the
sworn construction statement and seller's affidavit contained material misrepresentations and
omissions and intended that those documents be relied upon by the Mortgage Lenders and CTIC
in order to close on the acquisition of Parcel 5.

### F.    Parcel 6 -- 2914-128th Lane, Blaine, Minnesota

129.    Solodovnikova completed and submitted a mortgage loan application to lender
Wells U.S. Bank in 2007. On information and belief, Solodovnikova made material
misrepresentations of fact on her loan application, specifically relating to her: (1) assets; (2)
income; (3) intention to use the home as a primary residence; and (4) history of home ownership
prior to submitting the loan application.

130.    Based on the fraudulent loan application of Solodovnikova, lender U.S. Bank
approved mortgage loan financing for the acquisition of Parcel 6, and took a Mortgage executed
by Vera Solodovnikova in favor of U.S. Bank dated January 3, 2008 and recorded March 4, 2008
with the Anoka County Recorder as Doc. No. 1999158.006.

131.    Closing of the purchase of Parcel 6 took place on or about November 30, 2007.
Wells Title and its owner Vince Nguyen handled the closing as title agent.

132.    Sportsmens, Wells Title and Solodovnikova executed a series of documents at
closing, including a Mortgage, Note, HUD-1 Settlement Statement, affidavits and related
conveyancing documents.

133.    Sportsmens, Wells Title and Solodovnikova, at the direction or with the assistance
of a combination of other Defendants, signed a HUD-1 statement in support of the closing on
Parcel 6. By their signatures, Sportsmens, Wells Title and Solodovnikova certified that the HUD-

1 represented a true and accurate statement of all receipts and disbursements made on their account in the transaction. At the time they made their HUD-1 certifications, they knew the certifications were false in several key respects, including: (1) the HUD-1 intentionally omitted listing certain payments made to scheme participants either directly and/or indirectly out of the mortgage loan proceeds; and (2) the HUD-1 and related documentation falsely certified that certain defendant business entities had provided and were owed money for services they did not in fact provide.

134.    Multiple payments set forth in the HUD-1 were to business entities owned by or related to the scheme participants and were made for the sole purpose of compensating the scheme participants and perpetuating the mortgage fraud scheme.

135.    Sportsmens and Vera Solodovnikova misrepresented in the closing documents that Sportsmens, as well as multiple other entities owned by or affiliated with Sportsmens owners and principals, were entitled to payouts that grossly exceeded the fair market value of goods or services actually furnished.

136.    Sportsmens, at the direction of a combination of Defendants, executed and submitted a sworn construction statement and a seller's affidavit in support of closing on Parcel 6. The sworn construction statement intentionally omitted subcontractors that were owed money for their services on the construction of a new home on Parcel 6.  Sportsmens knowingly and intentionally misrepresented in its seller's affidavit that all subcontractors had been paid in full when they in fact had not. Sportsmens made these misrepresentations with the assistance of, or at the direction of, a combination of the other Defendant scheme participants in furtherance of the mortgage fraud scheme.

137.    Sportsmens, Solodovnikova, Wells Title, Vince Nguyen and a combination of

other Defendants knew that the sworn construction statement and seller's affidavit contained material misrepresentations and omissions and intended that those documents be relied upon by the Mortgage Lenders and CTIC in order to close on the acquisition of Parcel 6.

### G. Parcel 7 -- 2944-128th Lane, Blaine, Minnesota

138.    Defendant Katie Tran completed and submitted a mortgage loan application to lender Minnesota Lending Company in 2007. On information and belief, Katie Tran made material misrepresentations of fact on her loan application, specifically relating to her: (1) assets; (2) income; (3) intention to use the home as a primary residence; and (4) history of home ownership prior to submitting the loan application.

139.    Based on the fraudulent loan application of Katie Tran, lender Minnesota Lending Company approved mortgage loan financing for the acquisition of Parcel 7, and took a Mortgage on Parcel 7 dated November 30, 2007 and recorded February 7, 2008 with the Anoka County Recorder as Doc. No. 1998705.007.

140.    Closing of the purchase of Parcel 7 took place on or about November 30, 2007. Defendants Trend Title handled the closing as title agent.

141.    Sportsmens, Trend Title and Katie Tran executed a series of documents at closing, including a Mortgage, Note, HUD-1 Settlement Statement, and related conveyancing documents.

142.    Sportsmens and Katie Tran, at the direction or with the assistance of a combination of other Defendants, signed a HUD-1 statement in support of the closing on Parcel 7. By their signatures, Sportsmens and Katie Tran certified that the HUD-1 represented a true and accurate statement of all receipts and disbursements made on their account in the transaction. At the time they made their HUD-1 certifications, they knew the certifications were false in several key respects, including: (1) the HUD-1 intentionally omitted listing certain payments

31

made to scheme participants either directly and/or indirectly out of the mortgage loan proceeds; and (2) the HUD-1 and related documentation falsely certified that certain defendant business entities had provided and were owed money for services they did not in fact provide.

143.    Multiple payments set forth in the HUD-1 were to business entities owned by or related to the scheme participants and were made for the sole purpose of compensating the scheme participants and perpetuating the mortgage fraud scheme.

144.    In order to direct loan proceeds to the participants' business entities, Sportsmens, and Katie Tran falsely represented and certified on the HUD-1 and other closing documents that certain business entities related to the scheme participants had provided specified services on the transaction with full knowledge that those services had not in fact been provided.

145.    Sportsmens and Katie Tran also misrepresented in the closing documents that Sportsmens, as well as multiple other entities owned by or affiliated with Sportsmens owners and principals, were entitled to payouts that grossly exceeded the fair market value of goods or services actually furnished.

146.    Defendants Tim Tran and his business, Lincoln Homes submitted a fraudulent invoice falsely claiming to have provided specified services it did not in fact provide and claiming to be owed $151,800 for those alleged services. Based on the fraudulent invoice, $151,800 was paid out of the closing on Parcel 7 to Lincoln Homes, despite the fact that it provided no labor or materials toward that Parcel. This payment to Lincoln Homes was a method by which the Defendants misappropriated loan proceeds to the scheme participants in furtherance of the mortgage fraud scheme.

147.    Pentagon Real Estate Group, at the direction of a combination of Defendants, executed a fraudulent Seller Facilitator Services Agreement claiming an agreement to provide

32

services it in fact had no intention of providing. Pursuant to the fraudulent Seller Facilitator Services Agreement and fraudulent HUD-1 certifying that Pentagon had provided services it did not in fact provide, Pentagon Real Estate Group received $42,900 out of the closing on Parcel 7. On information and belief, the payment to Pentagon Real Estate Group was a misrepresented as a legitimate business transaction as part of the scheme to misappropriate loan proceeds to scheme participants.

148. Defendant Katie Tran had a pre-existing familial, personal and/or business relationship with Tim Tran and/or Lincoln Homes. On information and belief, this pre-existing relationship was deliberately concealed and was otherwise not disclosed to the Mortgage Lenders or CTIC.

149. Sportsmens, at the direction of a combination of Defendants, executed and submitted a sworn construction statement and a seller's affidavit in support of closing on Parcel 7. The sworn construction statement intentionally omitted subcontractors that were owed money for their services on the construction of a new home on Parcel 7. On information and belief, Sportsmens knowingly and intentionally misrepresented in its seller's affidavit that all subcontractors had been paid in full when they in fact had not. Sportsmens made these misrepresentations with the assistance of, or at the direction of, a combination of the other Defendant scheme participants in furtherance of the mortgage fraud scheme.

150. Sportsmens, Katie Tran and a combination of other Defendants also knew that the sworn construction statement and seller's affidavit contained material misrepresentations and omissions and intended that those documents be relied upon by the Mortgage Lenders and CTIC in order to close on the acquisition of Parcel 7.

## ALL TRANSACTIONS - POST-CLOSING

151.     On information and belief, not one of the new homes on any of the Seven Parcels was used as a primary residence by the Straw Buyer Defendants, nor did any of the Straw Buyers, at any time, possess an intention to make the new homes on the Seven Parcels their primary residence, despite their certifications to the contrary in the loan applications. Each of the new homes on the Seven Parcels were left vacant long after the subject closings.

152.     Katie Tran, Vera Solodovnikova and Lien Tran each misrepresented on two different loan applications for two different mortgage loans on two different properties that the new home at issue in each particular loan application would serve as their primary residence—an obvious indicator of fraud. They then scheduled their closings in close proximity to one another in order to conceal the other transaction from the Mortgage Lenders.

153.     The Defendants' scheme to misappropriate loan proceeds directly and proximately caused 84 Lumber to record mechanic's liens against each of the Seven Parcels and initiate the two State Actions to foreclose the mechanic's liens.

154.     Pursuant to loan policies of title insurance underwritten by CTIC, as successor in interest to Ticor, CTIC accepted the Mortgage Lenders' tender of defense in the State Actions, and was thrust into litigation with 84 Lumber to defend the priority of the mortgage liens.

155.     In order to defend the priority of the insured mortgages on Parcels 1 - 7 against the mechanic's lien claims of 84 Lumber, and in order to settle the mechanic's lien claims on Parcels 1, 3, 4, 5, 6 and 7, each of which was a direct and proximate result of the mortgage fraud scheme, CTIC incurred a loss of over $750,000.

156.     With respect to Parcel 2 only, CTIC has not incurred any damages over and above the costs, disbursements and attorneys' fees necessarily incurred in defending against the

foreclosure of 84 Lumber's mechanic's lien against that Parcel to date. CTIC has not paid any amounts to 84 Lumber to settle this particular claim and has no intention to do so. Nonetheless, the claim remains pending, and CTIC may incur additional costs and attorneys' fees to defend the mechanic's lien claim against Parcel 2 in the future. Such amounts should be included in CTIC's damages in the present action.

157.   On information and belief, the mortgage fraud scheme forming the subject of this cause of action was orchestrated with a continuity of identity and purpose, and was a continuous and ongoing scheme perpetrated by a number of the Defendants that involved a significant number of other properties not subject to this action. Indeed, several of the scheme participants in this action have been indicted and pled guilty to charges stemming from their involvement in similar mortgage fraud schemes involving straw buyers in the Twin Cities area between the years of 2006 and 2008.

158.   Defendant Vince Nguyen and Trung Calvin Tran were indicted and pled guilty in 2010 for a substantially similar mortgage fraud scheme involving the use of straw buyers, builders, title agents, and brokers to swindle mortgage lenders out of millions of dollars worth of mortgage loans issued to secure purchases of various parcels of real estate in the Twin Cities area. The United States' case against Vince Nguyen and Trung Calvin Tran was captioned as *U.S. v. Trung Quang Tran, et al,* in the United States District Court, District of Minnesota, Court File No. 10-cr-00112.

159.   Andrew Stoner, principal of Sportsmens, was indicted and pled guilty in 2011 to a nearly identical mortgage fraud scheme involving the use of straw buyers, builders, title agents, and brokers to swindle lenders out of several million dollars by fraudulently procuring and misallocating mortgage loan proceeds out of real estate closings in the Twin Cities area. Trung

35

Calvin Tran was also named by the United States District Attorney as a participant in the same scheme. The United States' case against Andrew Stoner is captioned as *U.S. v. Andrew Paul Stoner*, United States District Court, District of Minnesota, Court File No. 11-CR-00090.

160.    Sportsmens owners and principals Andrew Stoner and David Harmon filed for bankruptcy protection in United States Bankruptcy Court, District of Minnesota in cases captioned as *In re: Andrew P. Stoner and Elisa L. Stoner,* BKY No. 09-44812, and *In re: David E. Harmon and Tiffany R. Harmon,* BKY No. 09-51419, and thus have not been named as a Defendants in this action.

## COUNT I – FRAUD (Sportsmens)

161.    CTIC incorporates the preceding paragraphs of this Complaint herein by reference.

162.    Sportsmens, by and through its owners, agents, officers, and/or employees, made material misrepresentations of fact and concealed material and substantial facts in connection with a series of closings described above. Specifically, Sportsmens made material misrepresentations of fact: (1) in the seller's affidavits submitted in support of each of the seven closings by misrepresenting that subcontractors had been paid in full for their contribution of labor and materials when they in fact had not; and (2) in the sworn construction statements submitted in support of each of the seven closings whereby Sportsmens intentionally omitted any reference to 84 Lumber as a subcontractor who had performed labor or services toward the contribution of new homes on the Seven Parcels.

163.    On information and belief, these material misrepresentations and omissions were made in accordance with and in furtherance of the mortgage fraud scheme for the purpose of

funneling mortgage loan proceeds to the scheme participants without knowledge of the Mortgage Lenders or CTIC.

164. On information and belief, Sportsmens, by and through their owners, agents, officers, and/or employees knew that this information was false when it was submitted.

165. These misrepresentations were made with the intention to induce reliance by the Mortgage Lenders to extend mortgage loan financing, and to induce CTIC to underwrite loan policies of title insurance to insure the mortgages.

166. The Mortgage Lenders relied upon these misrepresentations to their detriment by financing the fraudulent mortgage loans. CTIC also relied upon these misrepresentations to its detriment by underwriting loan policies of title insurance on each of the subject mortgages of which it would not have issued but for Defendants' fraud.

167. CTIC has been damaged in excess of $750,000 as a result of its reliance upon Defendants' misrepresentations and being fraudulently induced to issue title insurance on the fraudulently procured mortgages.

## COUNT II –FRAUD (Straw Buyer Defendants: Katie Tran, Lua Nguyen, Vera Solodovnikova, Lien Tran)

168. CTIC incorporates the preceding paragraphs of this Complaint herein by reference.

169. The Straw Buyer Defendants made material misrepresentations of fact and concealed material and substantial facts in connection with the series of mortgage loan applications and closing documents submitted to the Mortgage Lenders. These misrepresentations involved incomplete, false, and misleading information concerning: (1) the Straw Buyer Defendants' financial information on the mortgage loan applications as identified above; (2) the Straw Buyer Defendants' employment information on the mortgage loan

applications; (3) false certifications that the homes to be purchased were intended for use as primary residences on the mortgage loan applications; (4) false certifications that the Buyer Defendants had not owned other properties for three years prior to completing the mortgage applications; (5) false certifications on the HUD-1 Statements that the transactions listed were a complete and accurate record of all transactions on the account, despite their knowledge that a number of payments to scheme participants out of the closings were either not disclosed or deliberately misrepresented as legitimate business transactions when they in fact were not.

170.   The Straw Buyer Defendants also concealed material and substantial facts in connection with the series of mortgage loan applications and closings, including: (1) that they were being compensated for use of their names and credit in the mortgage applications by other scheme participants; (2) that three of the Straw Buyers were purchasing two separate homes with loan financing extended by two different lenders, without knowledge or consent of their respective lenders; (3) that they did not intend to use the homes as their primary residences; and (4) that the fraudulent closing documents, including the HUD-1s, included material misrepresentations and omissions made for the sole purpose of compensating scheme participants out of the loan proceeds without knowledge of the Mortgage Lenders.

171.   The Straw Buyer Defendants knew that this information was false when it was provided to the Mortgage Lenders and CTIC.

172.   These misrepresentations were made with the intention to induce reliance by the Mortgage Lenders to extend mortgage loan financing, and to induce CTIC to underwrite loan policies of title insurance to insure the mortgages and defend against future mechanic's lien claims.

173.    The Mortgage Lenders relied upon these misrepresentations to their detriment by financing the fraudulent mortgage loans. CTIC also relied upon these misrepresentations to its detriment by underwriting loan policies of title insurance on each of the subject mortgages of which it would not have issued but for Defendants' fraud.

174.    CTIC has been damaged in excess of $750,000 as a result of its reliance upon Defendants' misrepresentations and being fraudulently induced to issue title insurance on the fraudulently procured mortgages.

### COUNT III –FRAUD (Wells Title; Vince Nguyen)

175.    CTIC incorporates the preceding paragraphs of this Complaint herein by reference.

176.    Wells Title by and through its owner, Vince Nguyen and its agents, officers, and/or employees, made material misrepresentations of fact and concealed material and substantial facts in connection with a series of closing documents and the HUD-1 Statements completed at various closings described above.

177.    Wells Title knowingly prepared and assisted in the preparation of false and misleading closing documents including: (1) fraudulent HUD-1 forms that falsely certified that they were a complete, true and accurate account of all transactions made on the account; (2) fraudulent sworn construction statements omitting any reference to 84 Lumber; and (3) fraudulent seller's affidavits that erroneously certified that all subcontractors had been paid for their work at the time of closings.

178.    Wells Title, by and through its owner Vince Nguyen and its agents, officers and/or employees, knew that this information was false when it was provided to the Mortgage

Lenders and CTIC, or submitted this information recklessly, without knowledge of its truth and as a positive assertion.

179.    These misrepresentations were made with the intention to induce reliance by the Mortgage Lenders to extend mortgage loan financing, and to induce CTIC to underwrite loan policies of title insurance to insure the mortgages.

180.    The Mortgage Lenders relied upon these misrepresentations to their detriment by financing the fraudulently-procured mortgage loans. CTIC also relied upon these misrepresentations to its detriment by underwriting loan policies of title insurance on each of the subject mortgages of which it would not have issued but for Defendants' fraud.

181.    CTIC has been damaged in excess of $750,000 as a result of its reliance upon Defendants' misrepresentations and being fraudulently induced to issue title insurance on the fraudulently procured mortgages.

## COUNT IV – FRAUD (Tim Tran; Lincoln Homes)

182.    CTIC incorporates the preceding paragraphs of this Complaint herein by reference.

183.    Tim Tran and Lincoln Homes, by and through its owners, agents, officers, and/or employees, submitted false invoices claiming to be owed a debt for services on Parcels 1 and 7 that were never provided.

184.    To any extent Lincoln Homes did provide services on Parcels 1 and 7, both the nature and value of those services were deliberately misrepresented by Tim Tran, Lincoln Homes and the other Defendants in furtherance of the mortgage fraud scheme.

185.    On information and belief, amounts paid to Lincoln Homes out of closings on Parcels 1 and 7 were made in accordance with and in furtherance of the mortgage fraud scheme

for the purpose of funneling mortgage loan proceeds to the scheme participants without knowledge of the Mortgage Lenders or CTIC.

186.    Tim Tran and Lincoln Homes, by and through its owners, agents, officers, and/or employees knew that this information was false when it was submitted.

187.    These misrepresentations were made with the intention to induce reliance by the Mortgage Lenders to extend mortgage loan financing, and to induce CTIC to underwrite loan policies of title insurance to insure the mortgages.

188.    The Mortgage Lenders relied upon these misrepresentations to their detriment by financing the fraudulent mortgage loans. CTIC, as the successor in interest to Ticor, also relied upon these misrepresentations to its detriment by underwriting loan policies of title insurance on each of the subject mortgages of which it would not have issued but for Defendants' fraud.

189.    CTIC has been damaged in excess of $750,000 as a result of its reliance upon Defendants' misrepresentations and being fraudulently induced to issue title insurance on the fraudulently procured mortgages.

## COUNT V – FRAUD (Cushman)

190.    CTIC incorporates the preceding paragraphs of this Complaint herein by reference.

191.    Cushman Realty, by and through its owners, agents, officers, and/or employees, made material misrepresentations of fact by entering into a fraudulent agency agreement with Sportsmens claiming an intention to perform unspecified services described as "assist the parties with closing" in exchange for a payment of $58,000.00 out of the closing of Parcel 1.

192.    At the time it entered into the fraudulent agency agreement, Cushman had no intention of performing the services specified and knew the fraudulent agreement was a sham transaction created to induce an unwarranted payout of funds at closing.

193.    On information and belief, Cushman did not provide any services in connection with the closing of Parcel 1.

194.    On information and belief, amounts paid to Cushman Homes out of closing of Parcel 1 were made in accordance with and in furtherance of the mortgage fraud scheme for the sole purpose of funneling mortgage loan proceeds to the scheme participants without knowledge of the Mortgage Lenders or CTIC.

195.    On information and belief, Cushman Homes, by and through its owners, agents, officers, and/or employees knew that this information was false when it was submitted.

196.    These misrepresentations were made with the intention to induce reliance by the Mortgage Lenders and CTIC to ensure successful closing of Parcel 1 and to allow for payouts to scheme participants without their knowledge.

197.    The Mortgage Lenders relied upon these misrepresentations to their detriment by financing the fraudulent mortgage loans. CTIC also relied upon these misrepresentations to its detriment by underwriting loan policies of title insurance on each of the subject mortgages of which it would not have issued but for Defendants' fraud.

198.    CTIC has been damaged in excess of $750,000 as a result of its reliance upon these misrepresentations and being fraudulently induced to issue title insurance on the fraudulently procured mortgages.

## COUNT VI – FRAUD (Pentagon; Premier)

199.    CTIC incorporates the preceding paragraphs of this Complaint herein by reference.

200.    Pentagon and Premier, by and through their owners, agents, officers, and/or employees, made material misrepresentations of fact and concealed material and substantial facts in connection with a series of closings described above. Specifically, Pentagon and Premier misrepresented that they had provided real estate services associated with the closings that they in fact had not, and/or grossly overcharged for services rendered in order to misallocate loan proceeds to scheme participants without knowledge of the Mortgage Lenders.

201.    On information and belief, amounts paid to Pentagon and Premier made out of the various closings described above were made in accordance with and in furtherance of the mortgage fraud scheme for the purpose of funneling mortgage loan proceeds to the scheme participants without knowledge of the Mortgage Lenders or CTIC.

202.    On information and belief, Pentagon and Premier, by and through their owners, agents, officers, and/or employees knew that this information was false when it was submitted.

203.    These misrepresentations were made with the intention to induce reliance by the Mortgage Lenders to extend mortgage loan financing, and to induce CTIC to underwrite loan policies of title insurance to insure the mortgages.

204.    The Mortgage Lenders relied upon these misrepresentations to their detriment by financing the fraudulent mortgage loans. CTIC also relied upon these misrepresentations to its detriment by underwriting loan policies of title insurance on each of the subject mortgages of which it would not have issued but for Defendants' fraud.

205.   CTIC has been damaged in excess of $750,000 as a result of its reliance upon Defendants' misrepresentations and being fraudulently induced to issue title insurance on the fraudulently procured mortgages.

### COUNT VII– CIVIL CONSPIRACY (Sportsmens; Lincoln Homes; Pentagon; Premier; Cushman; Wells Title; Tim Tran; Vince Nguyen; Katie Tran; Lua Nguyen; Vera Solodovnikova; Lien Tran)

206.   CTIC incorporates the preceding paragraphs of this Complaint herein by reference.

207.   The Defendants, either directly or through their employees and agents, formed a combination of persons with the purpose of accomplishing an unlawful purpose through both lawful and unlawful means.

208.   The Defendants did in fact accomplish an unlawful purpose by perpetrating a fraud on the Mortgage Lenders and CTIC and fraudulently inducing the extension of mortgage loans and loan policies of title insurance to which they otherwise were not entitled.

209.   CTIC has been damaged in excess of $750,000 as a result of its reliance upon Defendants' misrepresentations and being fraudulently induced to issue title insurance on the fraudulently procured mortgages.

### COUNT VIII -- RACKETEERING INFLUENCED CORRUPT ORGANIZATIONS ACT VIOLATIONS – SECTION 1962(c) (Sportsmens; Lincoln Homes; Pentagon; Premier; Cushman; Wells Title; Tim Tran; Vince Nguyen; Trung Calvin Tran; Katie Tran; Lua Nguyen; Vera Solodovnikova; Lien Tran)

210.   CTIC incorporates the preceding paragraphs of this Complaint herein by reference.

211.   All Defendants named herein combined as an association in fact for the purpose of inducing the Mortgage Lenders to fund mortgage loans and CTIC to underwrite policies of title insurance based on fraudulent and misleading documentation in the loan application and

closing process. This association in fact constitutes an Enterprise within the meaning and intent of 18 U.S.C. § 1961(4).

212.    On information and belief, the common or shared purpose of the Enterprise is to financially enrich the Defendants by misleading lenders to grant mortgage loans and title insurance companies to issue title insurance policies which exceed normal and customary lending practices induced by false and misleading documents and information whereby the financial ability of the Buyers to repay the loans and the Buyers' intention to use the property as primary residences are materially misrepresented.

213.    On information and belief, the Enterprise is ongoing and has a continuity of structure and personality: (A) On information and belief, Sportsmens, Vince Nguyen, Tim Tran, Trung Calvin Tran and a combination of other Defendants in this action recruited the Straw Buyer Defendants, provided the Straw Buyer Defendants with cash incentives, and prepared or instructed the Straw Buyers to prepare fraudulent loan application and transaction documents containing incomplete, false and/or fraudulent information concerning the Buyers' ability to repay the loans and their intention to use the properties as primary residences, among others; (B) a combination of the Defendants, including Sportsmens, the Straw Buyer Defendants, Wells Title, Vince Nguyen, and Tim Tran, among others, assisted with the preparation of fraudulent closing documents, falsely certified the accuracy of those documents, and submitted those documents to the Mortgage Lenders and CTIC in order to induce distribution of mortgage loans they ultimately misappropriated to themselves.

214.    On information and belief, a combination of the Defendants have participated in nearly identical mortgage fraud schemes both prior to and after the subject transactions.

215.    On information and belief, Tim Tran and Lincoln Homes were associated with the

45

Enterprise by serving as a conduit for the proceeds of the loan transactions and/or by providing improper financial inducements to the Borrowers for their participation in the fraudulent scheme. Tim Tran and Lincoln Homes also submitted false invoices claiming to have performed specified services that they in fact had not in order to create the appearance that they were legitimately owed proceeds out of various closings.

216.    On information and belief, Cushman and or its owners, agents, or employees were associated with the Enterprise by serving as a conduit for the proceeds of the loan transactions and/or by providing improper financial inducements to the Borrowers for their participation in the fraudulent scheme. Cushman Realty also prepared a false agency agreement agreeing to provide specified closing services and receiving compensation for those alleged services despite the fact that they were never performed.

217.    On information and belief, Pentagon, by and through its owners, agents, or employees were associated with the Enterprise by serving as a conduit for the proceeds of the loan transactions and/or by providing improper financial inducements to the Borrowers for their participation in the fraudulent scheme.

218.    On information and belief, Premier and or its owners, agents, or employees were associated with the Enterprise by serving as a conduit for the proceeds of the loan transactions and/or by providing improper financial inducements to the Borrowers for their participation in the fraudulent scheme.

219.    On information and Belief, the Straw Buyer Defendants, in conjunction with or at the direction of Vince Nguyen, Tim Tran, Trung Calvin Tran, Sportsmens and other named Defendants in this action, were associated with the Enterprise by making a series of false and fraudulent misrepresentations and omissions on their mortgage loan applications and closing

documents and for accepting financial inducements to do so without disclosing the same to the Mortgage Lenders or CTIC.

220.    The activities of the Enterprise affect interstate commerce.

221.    One or more of the business entity Defendants and the individual Defendants conducted or participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity within the meaning and intent of 18 U.S.C., § 1962(c) in that one or more of these Defendants, acting on behalf of all of the other Business Entity Defendants and Individual Defendants, and in furtherance of the fraudulent activities of the Enterprise, knowingly and intentionally committed wire fraud in violation of 18 U.S.C. § 1343; mail fraud in violation of 18 U.S.C. § 1341; and financial institutions fraud in violation of 18 U.S.C. § 1344.

222.    One or more of the business entity Defendants and the individual Defendants have violated 18 U.S.C. § 1343 by using wire transmissions to transmit false or misleading documents or other false and misleading information in connection with the application, origination and closing of the loan transactions described herein.

223.    One or more of the business entity Defendants and the individual Defendants have violated 18 U.S.C. § 1341 by placing in the U.S. Mail and/or causing to be delivered by U.S. Mail false or misleading documents or other false and misleading information in connection with the application, origination and closing of the loan transactions described herein.

224.    One or more of the business entity Defendants and the individual Defendants have violated 18 U.S.C. § 1344 by knowingly executing a scheme to defraud financial institutions and/or obtain monies under the custody or control of a financial institution by means of false or fraudulent pretenses, representations or promises.

225.    CTIC has been injured in its business or property in an amount that exceed

$750,000 by the foregoing violations of 18 U.S.C. 1962(c) as subrogee of the Mortgage Lenders who were fraudulently induced to approve and distribute mortgage loans and individually through having been fraudulently induced to issue title insurance policies to insure the transactions described herein, and suffering substantial economic loss in honoring those obligations prior to discovering the fraud described herein.

226.    Pursuant to 18 U.S.C. 1964(c), CTIC is entitled to an award of treble damages and attorneys' fees.

**COUNT IX – RACKETEERING INFLUENCED CORRUPT ORGANIZATIONS ACT VIOLATIONS – SECTION 1962(d) (Sportsmens; Lincoln Homes; Pentagon; Premier; Cushman; Wells Title; Tim Tran; Vince Nguyen; Trung Calvin Tran; Katie Tran; Lua Nguyen; Vera Solodovnikova; Lien Tran)**

227.    CTIC incorporates the preceding paragraphs of this Complaint herein by reference.

228.    The business entity Defendants and individual Defendants conspired to violate the provisions of 18 U.S.C. § 1962(c) in violation of 18 U.S.C. § 1962(d).

229.    On information and belief, the conspiracy of the business entity Defendants and individual Defendants began in mid-2007 when certain borrowers were induced to participate in the scheme and continued until at least December of 2007. Also on information and belief, one or more of the business entity and individual Defendants have participated in prior and subsequent mortgage fraud schemes, and continue to participate in substantially similar mortgage fraud schemes through the Business Entity Defendants or as yet undiscovered mortgage brokerage, real estate management and title company business entities.

230.    The object of this conspiracy was to financially enrich the business entity Defendants and the individual Defendants from the misappropriation of loan proceeds.

231.    The overt acts of the Defendants in furtherance of the conspiracy include: (A) On

information and belief, multiple Defendants and their employees, oversaw loan transactions and served as closing agents for the issuance of title commitments and title insurance policies and in that capacity, issued fraudulent loan applications, HUD-1 Statements and other closing documents; (B) On information and belief, Sportsmens, Vince Nguyen, Tim Tran and Trung Calvin Tran recruited the Straw Buyer Defendants to provide their names and credit in the mortgage loan application process in exchange for cash incentives, prepared or instructed the Straw Buyers to prepare loan application and transaction documents which contained incomplete, false and/or fraudulent information concerning the Straw Buyers' ability to repay the loans and their intention to use the properties as primary residences; (C) On information and belief, Sportsmens acted as a seller and builder of new homes on the subject properties and prepared fraudulent closing documents at the direction of a combination of the Defendants in this action. Sportsmens fraudulent documentation included HUD-1 Statements, sworn construction statements and sworn affidavits. The Defendants caused these fraudulent statements to be submitted to the Mortgage Lenders and CTIC in order to ensure the loan proceeds were distributed and could be misappropriated to the scheme participants; (D) On information and belief, a combination of Defendants including Sportsmens, Tim Tran, Lincoln Homes, Trung Calvin Tran, Cushman, Pentagon, Premier, Wells Title and or its owners, agents, or employees, served as a conduit for the proceeds of the loan transactions and/or provided improper financial inducements to the Straw Buyers for their participation in the fraudulent scheme without knowledge of the Mortgage Lenders or CTIC.

232.    The Defendants agreed to commit the foregoing acts and to further the endeavor of the Enterprise to cause the Mortgage Lenders to fund the fraudulent mortgage loans and CTIC

to underwrite the title insurance policies to which the Defendants were otherwise not entitled, and the participation of these Defendants in this scheme was knowing and willful.

233.    The overt acts of the Defendants included engaging in wire fraud, mail fraud and financial institutions fraud as specified above.

234.    CTIC has been injured in its business or property in an amount that exceeds $750,000 by the foregoing violations of 18 U.S.C. 1962(d) through having been fraudulently induced to issue title insurance policies to insure the above-described transactions, and suffering substantial economic loss in honoring its obligations prior to discovering the fraud described herein.

235.    Pursuant to 18 U.S.C. 1964(c), CTIC is entitled to an award of treble damages and attorneys' fees.

## COUNT X – NEGLIGENCE (Trend Title, Wells Title)

236.    CTIC incorporates the preceding paragraphs of this Complaint herein by reference.

237.    Trend Title and Wells Title had specific duties imparted on them regarding fraud prevention and disclosure to the mortgage lenders through accepting to serve as Title Agent on various closings described above.

238.    Trend Title and Wells Title breached their duties specifically related to fraud prevention and disclosure to the Mortgage Lenders and CTIC by failing to identify and/or disclose a series of highly suspicious facts pertaining to the mortgage fraud scheme to the Mortgage Lenders.

239.    Trend Title's and Wells Title's failure to disclose significant facts regarding the mortgage fraud scheme that would have and should have been uncovered through due diligence

and a reasonable inquiry was a direct and proximate cause of the mortgage loans being closed and the loan proceeds being misappropriated to the scheme participants.

240. CTIC has been damaged as a direct and proximate result of Defendants' negligence, and has suffered injury in an amount in excess of $750,000 the exact amount to be determined at trial.

## COUNT XI – UNJUST ENRICHMENT (Sportsmens; Lincoln Homes; Pentagon; Premier; Cushman; Tim Tran; Vince Nguyen; Trung Calving Tran; Katie Tran; Lua Nguyen; Vera Solodovnikova; Lien Tran; Wells Title)

241. CTIC incorporates the preceding paragraphs of this Complaint herein by reference.

242. Through the intentional and deliberate scheme to obtain and misappropriate mortgage loan proceeds through the use of materially false statements and omissions in the loan applications and closings, the Defendants unfairly and unduly procured mortgage loan proceeds to which they were not entitled. By misappropriating loan proceeds to the scheme participants, rather than the subcontractors who were rightfully owed those amounts, the Defendants caused mechanic's liens to be recorded against each of the Seven Lots.

243. Through the intentional and deliberate scheme to obtain title insurance policies ensuring the priority of the fraudulently procured mortgage liens, Defendants procured an undue and unfair benefit of shifting the significant cost-burden of defending and settling the mechanic's lien claims in the State Against onto CTIC.

244. It would be unfair and unjust for the Defendants to retain their illegally and unfairly obtained benefit procured by their intentional wrongful acts.

245. CTIC has been damaged in excess of $750,000 as a result of Defendants' unfair and wrongful conduct.

## PRAYER FOR RELIEF

1.      WHEREFORE, Plaintiff CTIC respectfully prays a judgment be entered in its favor on Count I - XI for its damages in an amount to be determined at trial, which CTIC estimates to be in excess of $750,000 plus attorneys' fees, expenses and costs, treble damages and for such other and further relief as the Court may deem appropriate under the circumstances.

2.  Judgment awarding CTIC its costs disbursements and attorneys' fees incurred herein; and

3.  Judgment awarding such other and further relief as this Court finds is just and equitable.


MACKALL, CROUNSE & MOORE, PLC


Dated: November 10, 2011           By:  s/ Matthew A. Anderson
                                            Matthew A. Anderson, # 284257
                                            Tim A. Staum # 0190470
                                            Daniel J. Sathre, #0390488
                                       1400 AT&T Tower
                                       901 Marquette Avenue
                                       Minneapolis, MN 55402
                                       Telephone:  612-305-1400
                                       Fax: 612-305-1414
                                       *Attorneys for Plaintiff Chicago Title
                                       Insurance Company*
                                                          1341108.2-DS