UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

| | |
|---|---|
| Chicago Title Insurance Company, individually and as subrogee of AmTrust Bank, Wells Fargo Bank, N.A., Bank of America, N.A. and Minnesota Lending Company;<br><br>               Plaintiff,<br>vs.<br><br>Sportsmens Contracting, Inc.; Lincoln Homes, Inc.; Pentagon Real Estate Group, Inc.; Premier Real Estate Services, LLC; Cushman Realty, Inc.; Wells Title, LLC; Trend Title, LLC; Thinh Tran a/k/a Tim Tran; Vince Long Nguyen; Truang Quang Tran a/k/a Trung Calvin Tran; Katie Thi Tran; Lua Nguyen; Vera Solodovnikova; Lien Phuong Thi Tran, Susanne E. Mathis; and David L. Germain, Jr.; Derrick A. Johnson; Daniel S. Rollings; Guarantee Trust & Title Corporation; Rachael Brabant; Perfection Lending, Inc.; Invescorp, Inc.; Todd Cushman;<br><br>               Defendants. | Case No. 11-cv-03314 – SRN/AJB<br><br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT** |

_____

      The following Motion for Entry of Default Judgment pursuant to Fed. R. Civ. P. 55(b)(2) (Doc. No. 114) came before the Court on May 14, 2013, at 10:00 a.m., at the United States District Courthouse, 774 Federal Building 316 N. Robert Street St. Paul, MN 55101. Tim A. Staum, Esq., appeared on behalf of Plaintiff. Defendants made no appearances. These Findings of Fact, Conclusions of Law and Order for Judgment are

based upon all of the pleadings, files, records, affidavits, papers and proceedings herein, and upon the motion of Plaintiff herein:

**FINDINGS OF FACT**

1. This case arises out of a straw buyer mortgage fraud scheme that directly and proximately damaged CTIC in the amount of $782,379.46 as of December 31, 2012. Plaintiff Chicago Title Insurance Company, individually and as subrogee of AmTrust Bank, Wells Fargo Bank, NA, Bank of America, NA, and Minnesota Lending Company ("CTIC"), seeks to be made whole for the direct and proximate injuries occasioned by the mortgage fraud.

2. CTIC has moved for default judgment against the following Defendants: David L. Germain, Jr., Guarantee Trust & Title Corporation, Invescorp, Inc., Derrick A. Johnson, Lincoln Homes, Inc., Lua Nguyen, Perfection Lending, Inc., Sportsmens Contracting, Inc., Katie Thi Tran, Thinh Tran a/k/a Tim Tran, Truang Quang Tran a/k/a Trung Calvin Tran, Pentagon Real Estate Group, Inc., and Wells Title, LLC (collectively, the "Defaulting Defendants").

3. The District Court has entered default against each of the Defaulting Defendants, finding that each had been properly served with the Plaintiff's Summons and Complaint, Amended Summons and Complaint and/or Second Amended Summons and Complaint, and had failed to answer or otherwise defend within the time provided by law, or was otherwise in default.

4. Each of the Defaulting Defendants, with the exception of David L. Germain, Jr.[1] participated in, furthered and profited from the mortgage fraud scheme that damaged Plaintiff.

5. In 2007, Andy Stoner, an owner of Defendant Sportsmens Contracting, Inc. ("Sportsmens") was introduced to Defendant Trung Calvin Tran ("Calvin Tran") through Defendant Derrick Johnson ("Johnson") and other mutual acquaintances.

6. The same year, Calvin Tran and his business, Defendant Invescorp, Inc. ("Invescorp"), entered into an agreement with Sportsmens whereby Calvin Tran would provide straw buyers to purchase Sportsmens' newly-constructed homes. The scheme was designed so that, after the purchase, the buyers would not actually occupy the homes, but instead, the homes would be managed and rented out by Invescorp until such time as they could be sold by Invescorp at a profit. In exchange for providing and qualifying straw buyers, Sportsmens promised Calvin Tran and Invescorp to pay a commission equal to 25-30% of the total sale price of each new home.

7. In 2007, the mortgage fraud scheme targeted the seven properties at issue in this case.[2] In order to obtain construction loan financing to acquire the Seven Parcels and construct new homes on each of them, Sportsmens, Calvin Tran, Perfection Lending,

---

[1] David L. Germain, Jr. did not participate in the mortgage fraud scheme, but is nonetheless individually liable for the full extent of CTIC's damages pursuant to his personal guaranty of all obligations of Defendant Trend Title, LLC ("Trend Title") to CTIC.
[2] The properties at issue in this case include the following parcels of real estate (collectively, the "Seven Parcels"):
15934 Quince Street, Andover, Minnesota, legally described as Parcel 15, Block 1, Constance Corners ("Parcel 1");

Inc., and other scheme participants prepared fraudulent purchase agreements, mortgage pre-approvals and earnest money checks and submitted them to the construction lender for the purpose of fraudulently inducing construction loans for each of the Seven Parcels. Calvin Tran acknowledged in his deposition that these documents were an outright fraud, referring to them as "dummy" documents which were prepared solely for the purpose of misleading the lender into believing that legitimate buyers had been secured for the properties.

8. The phony purchase agreements submitted to the construction lender identified the buyers for the Seven Parcels as either Calvin Tran or his former girlfriend, Keili Mac. Each of the earnest money checks made to look as though they were paid by Keili Mac were actually funded by Calvin Tran and Invescorp. Many of the earnest money checks were created merely for show, with no earnest money actually changing hands. In addition to the phony purchase agreements, the scheme participants prepared and submitted to the construction lender sham mortgage pre-approvals, which identified the buyer of each of the Seven Parcels as "Long Nguyen," Calvin Tran's father.

9. After the construction loan financing was approved, Sportsmens constructed new homes on each of the Seven Parcels. While the new homes were under construction, Calvin Tran and Invescorp worked to secure straw buyers. In order to recruit straw

---

15963 Quince Street, Andover, Minnesota, legally described as Parcel 16, Block 2, Constance Corners ("Parcel 2");
2970-128th Lane, Blaine, Minnesota, legally described as Parcel 14, Block 2, Harpers Street Woods ("Parcel 3");
3001-128th Lane, Blaine, Minnesota, legally described as Parcel 11, Block 1, Harpers Street Woods ("Parcel 4");
3036-128th Lane, Blaine, Minnesota, legally described as Parcel 5, Block 3, Harpers Street Woods ("Parcel 5");
2914-128th Lane, Blaine, Minnesota, legally described as Parcel 21, Block 2, Harpers Street Woods ("Parcel 6"); and
2944-128th Lane, Blaine, Minnesota, legally described as Parcel 17, Block 2, Harpers Street Woods ("Parcel 7").

buyers to participate in the scheme, Calvin Tran promised straw buyers up to $10,000 per transaction, plus a share of the profits once the homes were eventually re-sold.

10. Ultimately, Calvin Tran and Invescorp convinced Vera Solodovnikova and Lien Tran to join the scheme as straw buyers of Parcels 3, 4, 5 and 6 in exchange for compensation from Invescorp. Calvin Tran referred to the process as the "sale" of the straw buyer's credit to Invescorp. Tran also acknowledged that the straw buyers had no knowledge of the real estate transaction or anything actually related to the properties, but merely agreed to sell their credit to Invescorp in exchange for payment.

11. Defendants Tim Tran and his business, Lincoln Homes, Inc. ("Lincoln Homes") were later introduced to Sportsmens through Johnson and Daniel Rollings ("Rollings"), another Pentagon agent. While the homes on the Seven Parcels were being constructed, Tim Tran and Lincoln Homes were substituted as the suppliers of straw buyers for Parcels 1, 2 and 7 because they offered to do so for a smaller commission. This agreement was negotiated between Johnson and Tim Tran.

12. Tim Tran was responsible for bringing straw buyers Katie Tran and Lua Nguyen into the scheme for the purpose of purchasing Parcels 1, 2 and 7.

13. After securing straw buyers for each of the Seven Parcels, Calvin Tran, Tim Tran and other scheme participants prepared and submitted fraudulent mortgage loan applications on behalf of the straw buyers. The fraudulent loan applications overstated the straw buyers' assets, misrepresented their employment history and

history of real estate ownership, understated their liabilities, falsely represented that the purpose of the mortgage loan financing was to purchase a primary residence for each buyer, and misrepresented the source of the straw buyers' down payment funds. Calvin Tran and Invescorp also submitted doctored bank statements in support of the loan applications which deliberately misrepresented the straw buyers' assets. Each of the straw buyers signed and initialed the fraudulent purchase agreements at closing.

14. Based upon the scheme participants' fraudulent misrepresentations and omissions in loan applications and closing documentation, and without knowledge of their fraudulent nature at the time, CTIC underwrote loan policies of title insurance guaranteeing first priority position for mortgages on each of the Seven Parcels.

15. Subcontractor 84 Lumber was hired by Sportsmens to furnish lumber for new homes on each of the Seven Parcels. During construction, 84 Lumber furnished labor and materials toward the Seven Parcels worth in excess of $450,000.

16. After mortgage loans for each of the Seven Parcels were approved, and construction of the new homes completed, the Defendant scheme participants staged separate mortgage loan closings for each transaction. In the case where a straw buyer was obtaining mortgage loan funds for more than one property, the scheme would hold nearly simultaneous closings to ensure each lender would not find out about the other transaction. For each closing, the particular agent handling the closing was selected by the buyer and his or her representatives, in this case, Calvin Tran and Tim Tran.

17. Defendants Susanne Mathis and Trend Title were selected by Tim Tran to handle closing for Parcels 1, 2 and 7. Defendants Vince Nguyen, Rachael Brabant and Wells Title were selected by Calvin Tran to handle closing for Parcels 3, 4, and 6. Defendant Guarantee Trust & Title Corporation ("Guarantee") was selected by Calvin Tran to handle the closing of Parcel 5 (Susanne Mathis, Trend Title, Vince Nguyen, Rachael Brabant, Wells Title and Guarantee will be referred to collectively as the "Closing Agents").

18. Sometime before the closings were finalized, the Defendants entered into a "group decision" to misappropriate the funds owed to 84 Lumber to the scheme participants. Prior to closing, the scheme participants knew that 84 Lumber was in the process of going out of business, leading the scheme participants to believe they could get away with not paying 84 Lumber and keeping the funds owed to 84 Lumber for themselves.

19. At each closing, the down payment was paid by someone other than the named borrower. For example, on Parcel 1, Katie Tran's down payment was secretly funded by Defendant Todd Cushman via delivery to closing of a Cushman Realty, Inc. check, a transaction which was fraudulently misrepresented in a phony Seller/Facilitator Services Agreement and false HUD-1. The Closing Agents, Sportsmens and the Straw Buyers falsely certified on the HUD-1 and Additional Disbursements Exhibits that the down payment had been paid by the Straw Buyer when it in fact had not.

20. In order to misappropriate funds owed to 84 Lumber to scheme participants, Sportsmens, the Straw Buyers and the Closing Agents falsified Seller's Affidavits and

Sworn Construction Statements that fraudulently omitted reference to 84 Lumber as a subcontractor owed funds at closing and misrepresenting that all subcontractors had been paid in full for their contribution of labor and or material to the Seven Parcels when they in fact had not.

21. Calvin Tran, Tim Tran and the Title Agents also falsified HUD-1 forms and additional disbursement exhibits at closings to actively misrepresent to lenders how the loan proceeds were disbursed. For some transactions, two vastly different versions of closing documents were prepared by the scheme participants. One copy, retained only by the scheme participants, would show a true accounting of how the funds were disbursed. The second copy, the one actually submitted to the lender at closing, misrepresented how the funds were disbursed to actively conceal illegal third party payments to scheme participants.

22. At each closing, the funds owed to subcontractor 84 Lumber were misappropriated to scheme participants via excessive and unwarranted commissions to Sportsmens, Pentagon, Premier, Cushman Realty and Lincoln Homes. In total, over $450,000 of funds owed to 84 Lumber were distributed to scheme participants at closing through a series of fraudulent misrepresentations and omissions in closing documents including HUD-1's, Additional Disbursements Exhibits, Seller/Facilitator Services Agreements, sham invoices, Seller's Affidavits and Sworn Construction Statements.

23. Taken together, these fraudulent documents induced the mortgage lenders to fund mortgage loans, and CTIC to insure the first priority position of those mortgages, for

each of the Seven Parcels, under the false assumption that all subcontractors had been paid for their work at closing, and that the insured mortgages properly had first priority position.

24. Shortly after each closing, Sportsmens paid Invescorp for providing and qualifying straw buyers for the Seven Parcels. The payments from Sportsmens to Invescorp were fraudulently omitted from the closing documents submitted by the scheme participants to the mortgage lenders. Notably, not one penny of Sportsmens' payments to Invescorp was properly disclosed to the mortgage lenders in closing documentation.

25. Lincoln Homes received a total of $206,600 out of the closings of Parcels 1 and 7. Lincoln Homes provided no legitimate services, but rather, was compensated solely for securing and qualifying straw buyers for Parcels 1, 2 and 7. The justification for payments to Lincoln Homes was deliberately misrepresented in two invoices and Additional Disbursements Exhibits, which fraudulently claimed that Lincoln Homes had provided unspecified "project management" or "staging" services. Andy Stoner, an owner of Sportsmens, confirmed in his deposition that the Lincoln Homes invoices were indeed fraudulent, as Lincoln Homes did not in fact provide any legitimate services whatsoever, and was compensated solely for securing and qualifying straw buyers for Parcels 1, 2 and 7.

26. As a result of not being paid for its contribution of labor and materials toward the Seven Parcels, 84 Lumber recorded mechanic's liens against each of the Seven

Parcels and initiated two separate foreclosure actions in Minnesota State Court, captioned as *84 Lumber Company v. Sportsmens Contracting, Inc., et al.*, Court File No. 02-CV-08-7322 (the "7322 Action") and *84 Lumber Company v. Sportsmens Contracting, Inc. et al.*, Court File No. 02-CV-08-7195 (the "7195 Action") (collectively, the "State Actions").

27. As the underwriter of loan policies of title insurance for each of the Seven Parcels, CTIC was contractually obligated to accept the insured lenders' tenders of defense in the State Actions. After the State Actions were commenced, the mortgage lenders tendered defense of 84 Lumber's foreclosure claims to CTIC. Based upon CTIC's obligations under the loan policies, CTIC accepted the insured lenders' tenders of defense in the State Actions and incurred $128,930.10 in attorneys' fees to defend against the liens. CTIC's counsel successfully defeated the mechanic's lien on Parcel 2. Nonetheless, for Parcels 1, 3, 4, 5, 6 and 7, 84 Lumber obtained summary judgment on its mechanic's lien foreclosure claims. As a result of the State Court's summary judgment Orders, CTIC paid to 84 Lumber a total of $653,449.36 to satisfy the judgments in the State Actions and preserve first priority position of the insured mortgages on the Seven Parcels.

28. In prosecuting its claims against the Defaulting Defendants in this action, CTIC has reasonably and necessarily incurred an additional $182,596.29 in attorneys' fees, costs and disbursements through December 31, 2012.

29. Each of the Defaulting Defendants, with the exception of David Germain, Jr., knowingly and willfully participated in the mortgage fraud scheme through a series of fraudulent misrepresentations and omissions to the Mortgage Lenders and CTIC for the sole purpose of improper and illegal financial gain through the misappropriation of mortgage loan proceeds to themselves.

30. Arising out of these facts, CTIC has asserted the following claims against the Defaulting Defendants:

   a. Guarantee Trust & Title Corporation: Fraud, Civil Conspiracy, RICO 1962(c), Negligence, Unjust Enrichment, Indemnity, Breach of Contract;

   b. Invescorp, Inc.: Civil Conspiracy, RICO 1962(c), RICO 1962(d), Unjust Enrichment;

   c. Derrick A. Johnson: Fraud, Civil Conspiracy, RICO 1962(c), RICO 1962(d), Unjust Enrichment;

   d. Lincoln Homes, Inc.: Fraud, Civil Conspiracy, RICO 1962(c), RICO 1962(d), Unjust Enrichment;

   e. Lua Nguyen: Fraud, Civil Conspiracy, RICO 1962(c), RICO 1962(d), Unjust Enrichment;

   f. Perfection Lending, Inc.: Civil Conspiracy, RICO 1962(c), RICO 1962(d),

   g. Sportsmens Contracting, Inc.: Fraud, Civil Conspiracy, RICO 1962(c), RICO 1962(d), Unjust Enrichment;

h. Katie Thi Tran: Fraud, Civil Conspiracy, RICO 1962(c), RICO 1962(d), Unjust Enrichment;

i. Thinh Tran a/k/a Tim Tran: Fraud, Civil Conspiracy, RICO 1962(c), RICO 1962(d), Unjust Enrichment;

j. Truang Quang Tran a/k/a Trung Calvin Tran: Civil Conspiracy, RICO 1962(c), RICO 1962(d), Unjust Enrichment;

k. David Germain, Jr.: Personal Guaranty;

l. Wells Title, LLC: Fraud, Civil Conspiracy, RICO 1962(c), RICO 1962(d), Negligence, Unjust Enrichment; and

m. Pentagon Real Estate Group, Inc.: Fraud, Civil Conspiracy, RICO 1962(c), RICO 1962(d), Unjust Enrichment.

31. As noted above, CTIC has not alleged that Defendant David Germain, Jr. participated in the straw-buyer mortgage fraud scheme. Nonetheless, pursuant to a personal guaranty of all Trend Title liabilities to CTIC dated July 13, 2005, David Germain, Jr. is liable to the full-extent of RICO participant Trend Title.

## **CONCLUSIONS OF LAW**

32. Each of the Defaulting Defendants was properly served with Plaintiff's Summons and Complaint, Amended Summons and Complaint and/or Second Amended Summons and Complaint and has failed to answer or otherwise defend within the time permitted by law.

33. Each of the Defaulting Defendants, with the exception of David Germain, Jr., knowingly and willfully participated in the above-described straw buyer mortgage fraud scheme designed to fraudulently-induce mortgage loans and misappropriate the loan proceeds at closing through a series of fraudulent misrepresentations and omissions in loan application, closing and other documentation.

34. Each of the Defaulting Defendants' participation in the mortgage fraud scheme directly and proximately damaged CTIC.

35. Each of the Defaulting Defendants is liable to CTIC, for each of the claims pled against them in the Second Amended Complaint, for the entire extent of CTIC's damages, plus attorneys' fees incurred in this action and treble damages as provided in 18 U.S.C. § 1964(c).

36. As a direct and proximate result of the Defendants' mortgage fraud scheme, as detailed above, CTIC was damaged in the amount of $782,379.46. This amount is comprised of all sums reasonably and necessarily incurred by CTIC as a direct and proximate result of the Defaulting Defendants' knowing and willful participation in the mortgage fraud scheme. This sum includes $128,930.10 in attorney's fees and costs in the State Court action and $653,449.36 in payments made to satisfy the State Court judgments.

37. CTIC's $128,930.10 in attorney's fees and costs in the underlying State Court actions are considered damages pursuant to the third-party litigation doctrine. See Onepoint Solutions, LLC v. Borchert, 486 F.3d 342, 352 (8th Cir. 2007) (observing that

Minnesota has adopted the third-party litigation exception to the American rule that each party is responsible for paying its own attorney's fees absent a specific contractual provision or statutory authority) (citing Kallok v. Medtronic, Inc., 573 N.W.2d 356, 363 (Minn. 1998)). Where a party commits a tortious act, such as the fraud at issue here, which projects another party into litigation with a third party, a court may award attorney's fees as damages. Id. Defendants' tortious conduct projected CTIC into litigation with a third party, 84 Lumber, in the State Court mechanic's lien actions. CTIC was obliged to defend these actions on behalf of the insured lender-defendants pursuant to CTIC's indemnification obligations under the applicable title insurance policies.

38. After trebling CTIC's damages from the underlying State Court actions ($782,379.46 x 3 = $2,347,138.38) and then adding attorneys' fees from this action ($182,596.29), in accordance with 18 U.S.C. § 1964(c), each of the Defaulting Defendants is, jointly and severally liable to CTIC for a total amount of $2,529,734.67 ($2,347,138.38 + $182,596.29 = $2,529,734.67).

## **ORDER**

1. Plaintiff Chicago Title Insurance Company's Motion for Entry of Default Judgment pursuant to Fed. R. Civ. P. 55(b)(2) (Doc. No. 114) against Defendants David L. Germain, Jr., Guarantee Trust & Title Corporation, Invescorp, Inc., Derrick A. Johnson, Lincoln Homes, Inc., Lua Nguyen, Perfection Lending, Inc., Sportsmens Contracting, Inc., Katie Thi Tran, Thinh Tran a/k/a Tim Tran, Truang Quang Tran a/k/a

Trung Calvin Tran, Pentagon Real Estate Group, Inc., and Wells Title, LLC (the "Defaulting Defendants") is **GRANTED**.

2. Default judgment shall be entered against the Defaulting Defendants, jointly and severally, in favor of Plaintiff, in the amount of $2,529,734.67.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 30, 2013	BY THE COURT:

<u>s/Susan Richard Nelson</u>
Susan Richard Nelson
United States District Judge